DeConcini McDonald Yetwin & Lacy, P.C.
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0500
Fax: 602-282-0520
Direct line: 602-282-0472

Lawrence D. Hirsch, #004982
Attorney For Debtor

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 11 |
| JUDY ABLES-MORIN, | Case No. 2-09-bk-04062-SSC |
| Debtor | DEBTOR'S DISCLOSURE STATEMENT |

I. Introduction..................................................................................................2

II. Plan of Reorganization..................................................................................3

    A. Classes of Claims..................................................................................3

    B. Provisions Respecting the Unimpaired Classes of Claims..................7

    C. Provisions Respecting the Impaired Classes of Claims .....................8

    D. Application of Absolute Priority Rule................................................11

    E. Liquidation Analysis...........................................................................11

    F. History of Debtors..............................................................................11

III. Financial Information..................................................................................15

IV. Litigation.....................................................................................................15

V. Tax Consequences to Creditors..................................................................15

VI. Tax Consequences to Debtors....................................................................15

VII. Approval of Plan.........................................................................................15

EXHIBITS:

A. Plan of Reorganization

B. Chapter 11 Operating Reports

C. 2006 - 2008 Tax Returns

D. Real Estate Appraisals

E. Income and Expense Projections

F. Amortization Schedules for Real Estate Holdings

G. Form of Ballots

## I. INTRODUCTION

Pursuant to 11 U.S.C. § 1125, Debtor and Debtor-In-Possession ("Debtor") in the above-captioned Chapter 11 case, Judy Ables-Morin, provide this Disclosure Statement to all of her known creditors, and other parties in interest. The purpose of this Disclosure Statement is to provide such information as may be deemed material important and necessary for the creditors of Debtor to be reasonably informed in regard to the Debtor's Plan of Reorganization dated September 15, 2009 ("The Plan"). The Plan, a copy of which accompanies this Disclosure Statement as Exhibit "A" and is made a part hereof, was filed in the United States Bankruptcy Court for the District of Arizona ("Bankruptcy Court") on September 15, 2009. The portions of this Disclosure Statement describing the Debtor has not been subject to a certified audit, but rather has been prepared from information submitted by the Debtor from financial records maintained by the Debtor in the ordinary course of business. Every effort has been made to be as accurate as possible in the preparation of this Disclosure Statement.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HER FUTURE BUSINESS OPERATIONS OR THE VALUE OF HER ASSETS) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE

CERTIFICATION BY THE COURT AS TO THE ACCURACY OF ANY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT. THOSE OBTAINING THIS DISCLOSURE STATEMENT SHOULD SEEK THEIR OWN INDEPENDENT COUNSEL IN ANALYZING THE CONTENTS OF THE DISCLOSURE STATEMENT.

## II. PLAN OF REORGANIZATION

Reference is made to the plan for details concerning the classification and treatment of holders of claims and interest. All terms defined in the Plan have the same meanings herein, unless otherwise noted.

A. Classes of Claims and Interests

The Plan divides the creditors into 11 classes. The classes under the Plan are described below:

1. Class 1: Creditors Holding Administrative Claims

Debtor has employed DeConcini, MacDonald, Yetwin and Lacy ("DeConcini") as General Counsel for the Debtor-in-Possession. DeConcini received a retainer of $12,000.00 from the personal funds of Debtor. To the extent that unencumbered funds are available to pay administrative expenses, counsel shall be paid from the estate. Counsel shall be paid only after fees are approved by the Court after Notice and Hearing. Debtor believes she is current on post-petition taxes. Debtor does not believe that she is indebted to the Office of the United States Trustee for any post-petition quarterly fee obligations. To the extent that such fees are unpaid, they shall be paid no later than the effective date of the Order Confirming Debtor's Chapter 11 Plan of Reorganization. DeConcini has filed its first Fee Application.. To the extent that the retainer paid by Debtor is not adequate to cover all fees incurred by DeConcini, Debtor and DeConcini will make suitable arrangements for the payment of any unpaid fees due at the time of Confirmation of the Plan. Any and all fees due for other outside professionals shall be paid in full by Debtor, either upon the effective date of confirmation of the Plan or pursuant to an agreement reached between the Debtor and the Claim holder or upon an Order approving

the fees, if unencumbered funds are present. Debtor shall remain current in required filings of monthly operating reports and post-Confirmation reports as well as payment of quarterly fees until the case is closed. Payment of allowed Administrative Expenses shall be made from the cash flow of Debtor's business operations, post-petition income, and/or the liquidation of Debtor's assets. Debtors shall promptly pay all fees due the Office of the United States Trustee.

2. Class 2-8: Creditors Holding Secured Claims

a. Class 2: Bayview Loan Servicing LLC: Bayview Loan Servicing LLC ("Bayview") services a first mortgage on the Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona 85355 for CitiMortgage, Inc. The debt due to Bayview is approximately $461,650.00. Pursuant to 11 U.S.C. Section 1123(b)(5) this lien holder's rights may not be modified, and is therefore unimpaired. Debtor is attempting to negotiate a loan modification with this creditor.

b. Class 3: Deborah and Jim Walters: These creditors are unimpaired. The creditors are secured on real property located at Parcel 8-D, Silver Mountain Ranch, Mohave County, Arizona. Debtor will continue to make payments as required under the contract for sale.

c. Class 4: CitiMortgage: CitiMortgage holds a first mortgage on the Debtors' investment property located at 18229 W. Maui, Surprise, Arizona 85388. The amount due Citi Mortgage is approximately $162,000.00 and the property has a fair market value of $148,000.00. Debtors will bifurcate CitMortgage's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due CitiMorgage (approximately $14,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $665.35. The

pay off of the principal at the end of 96 months will be $135,277.02. CitiMortgage has filed a Motion to Lift the Automatic Bankruptcy Stay. Debtor has filed a response asserting that the property is necessary for reorganization. CitiMortgage is impaired.

       d.      <u>Class 5: Ford Motor Credit Company LLC :</u> Ford Motor Credit Company LLC ( "Ford Credit") has a lien on Debtor's' 2007 Ford Focus. The debt due Ford Credit is approximately $13,300.00 and the fair market value of the car is $8,000.00. Ford Credit filed for Relief from the Automatic Stay, and Debtor did not oppose the motion. Stay relief was granted and the vehicle has been surrendered. Any deficiency due Ford Credit on this claim, shall be treated as a General Unsecured Claim under Class 11 of the Plan. Ford Credit is impaired.

       e.      <u>Class 6: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") has a non purchase money lien on Debtor's 2005 Ford Truck 4 x4 and Debtor's 2006 Ford Truck. The debt due ACCU is approximately $39,000.00 and the fair market value of the 2005 Ford 4x4 is $15,000.00 and the value of the 2006 Ford Truck is $11,000.00. . Debtor shall bifurcate ACCU's claim into a secured and unsecured portion. The secured portion of the claim shall be paid in 60 equal monthly payments at 5% interest commencing upon the Plan Distribution Date. Debtor has offered adequate protection and has received no response from ACCU.  The unsecured portion of the claim shall be treated as a General Unsecured Claim under Class 11 of the Plan. ACCU shall release its lien on the car after completion of payments of the secured portion of the claim. Monthly payments on the 2005 vehicle will be $283.07. Monthly payments on the 2006 vehicle will be $207.58. ACCU is impaired.

       f.      <u>Class 7: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") held a second lien on Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona and Debtor's investment property located at 18229 W. Maui, Surprise, Arizona 85388. Complaints under 11 U.SC. Section 506 have been filed on each lien and default judgments have been entered. Pursuant to the default judgments the liens

have been set aside and these claims of ACCU shall be treated as a General Unsecured Claims under Class 11 of the Plan. ACCU is impaired.

    g. <u>Class 8: IndyMac Bank:</u> IndyMac Bank ("Indy Mac") has a first lien on Debtor's investment property located at 18425 W. Ivy Lane, Surprise, Arizona 85388. The amount due IndyMac is approximately $410,000.00 and the property has a fair market value of $280,000.00. Debtors will bifurcate IndyMac's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due IndyMac (approximately $130,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $1,258.78. The pay off of principal at the end of the 96 month plan will be $255,928.24. IndyMac is impaired.

  3. <u>Class 9: Executory Contracts</u>

Debtor is a party to a lease with Ford Motor Credit Company LLC ("Ford Credit") for lease on a 2008 Ford Focus. Debtor has rejected the lease and surrendered the vehicle. The balance due Ford Credit shall be treated as a General Unsecured Claim under Class 11 of the Plan. Ford Credit is impaired.

  4. <u>Class 10: Creditors Holding Priority Claims</u>

Debtor has recently been contacted by the Internal Revenue Service ("IRS") and has been advised that it is conducting an audit for the tax year ending December 31, 2007. Debtor does not believe that a tax liability exists. To the extent that a tax liability does exist, it will be paid in full with interest at the statutory rate within sixty (60) months after filing the Petition for Chapter 11 relief. The balance of the IRS's claim, if any, shall be

treated as a General Unsecured Claim under Class 11 of the Plan. The IRS is impaired.

        5.      <u>Class 11: General Unsecured Creditors</u>

All other persons and entities that have extended credit, provided services or merchandise on an open account or have lent money to Debtor and all other parties whose claim are unsecured, including the unsecured portion of the claims of secured creditors Classes 2-9, and tax penalties due any taxing authority shall be considered holding General unsecured claims. Payment shall be made to General unsecured creditors after payment of Administrative and Priority Claims have been paid. Unsecured claims shall be paid from the proceeds of Debtor's business and employment.

Payments to General Unsecured Creditors shall commence after payment of Administrative Claims, Priority Claims and any arrears due to Bayview on Debtor's primary residence. General Unsecured Creditors shall be paid pro rata, without interest up to a total of $5,000.00. Payment shall be made without interest on claims, as Debtor has no non-exempt property and does not have disposable income. Debtor believes that General Unsecured Claims shall be paid their pro rata share within sixty (60) months of the Plan Distribution Date.

    B.    <u>Provisions Respecting the Unimpaired Classes of Claims</u>

        1.    <u>Class 1: Administrative Expenses:</u> The holders of claims for unpaid Administrative Expenses incurred by the Debtor during the course of the Chapter 11 case (including the actual and necessary expenses for preserving the estate, such as unpaid attorney's fees) estimated in the aggregate to be approximately $20,000, will be paid in full commencing either the effective date of the Plan or upon the allowance of the claim by the

Bankruptcy Court, whichever is later, or at such other time as is mutually agreeable to the claimant and the Debtor. Claims for post-petition taxes, if any, and unpaid Quarterly Fees due the office of the United States Trustee shall be paid immediately when due.

      2.      <u>Class 2: Bayview Loan Servicing LLC:</u> Bayview Loan Servicing LLC ("Bayview") services a first mortgage on the Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona 85355. For CitiMortgage, Inc. The debt due to Bayview is approximately $461,650.00. Pursuant to 11 U.S.C. Section 1123(b)(5) this lien holder's rights may not be modified, and is therefore unimpaired. Debtor is attempting to negotiate a loan modification with this creditor.

      3.      <u>Class 3: Deborah and Jim Walters:</u> These creditors are unimpaired. The creditors are secured on real property located at Parcel 8-D, Silver Mountain Ranch, Mohave County, Arizona. Debtor will continue to make payments as required under the contract for sale.

    C.    <u>Provisions Respecting the Impaired Classes of Claims</u>

      1.      <u>Class 4: CitiMortgage Inc.</u> CitiMortgage Inc. ("CitiMortgage) holds a first mortgage on the Debtors' investment property located at 18229 W. Maui, Surprise, Arizona 85388. The amount due CitiMortgage is approximately $162,000.00 and the property has a fair market value of $148,000.00. Debtors will bifurcate CitMortgage's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due CitiMorgage (approximately $14,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $665.35. The pay off of the principal at the end of 96 months will be $135,277.02. CitiMortgage has filed a Motion to Lift the Automatic Stay. Debtor has responded and the

matter is still pending.

2. <u>Class 5: Ford Motor Credit Company LLC:</u> Ford Motor Credit Company LLC ("Ford Credit') has a lien on Debtor's' 2007 Ford Focus. The debt due Ford Credit is approximately $13,300.00 and the fair market value of the car is $8,000.00. Ford Credit filed for Relief from the Automatic Stay, and Debtor did not oppose the motion. Stay relief was granted and the vehicle has been surrendered. Any deficiency due Ford Credit on this claim, shall be treated as a General Unsecured Claim under Class 11 of the Plan.

3. <u>Class 6: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") has a non purchase money lien on Debtor's 2005 Ford Truck 4 x4 and Debtor's 2006 Ford Truck. The debt due ACCU is approximately $39,000.00 and the fair market value of the 2005 Ford 4x4 is $15,000.00 and the value of the 2006 Ford Truck is $11,000.00. Debtor shall bifurcate ACCU's claim into a secured and unsecured portion. The secured portion of the claim shall be paid in 60 equal monthly payments at 5% interest commencing upon the Plan Distribution Date. Debtor has offered adequate protection and has received no response from ACCU. The unsecured portion of the claim shall be treated as a General Unsecured Claim under Class 11 of the Plan. ACCU shall release its lien on the car after completion of payments of the secured portion of the claim. Monthly payments on the 2005 vehicle will be $283.07. Monthly payments on the 2006 vehicle will be $207.58.

4. <u>Class 7: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") holds a second lien on Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona and Debtor's investment property located at 18229 W. Maui, Surprise, Arizona 85388. Complaints under 11 U.SC. Section 506 have been filed on each

lien and default judgments have been entered. Pursuant to the default judgments the liens have been set aside and the claims of ACCU shall be treated as a General Unsecured Claims under Class 11 of the Plan.

5. <u>Class 8: IndyMac Bank:</u> IndyMac Bank ("Indy Mac") has a first lien on Debtor's investment property located at 18425 W. Ivy Lane, Surprise, Arizona 85388. The amount due IndyMac is approximately $410,000.00 and the property has a fair market value of $280,000.00. Debtors will bifurcate IndyMac's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due IndyMac (approximately $130,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $1,258.78. The pay off of principal at the end of the 96 month plan will be $255,928.24.

6. <u>Class 9: Executory Contracts</u>

Debtor is a party to a lease with Ford Motor Credit Company LLC ( "Ford Credit") for lease on a 2008 Ford Focus. Debtor has rejected the lease and surrendered the vehicle. The balance due Ford Credit shall be treated as a General Unsecured Claim under Class 11 of the Plan.

7. <u>Class 10: Creditors Holding Priority Claims:</u>

Debtor has recently been contacted by the Internal Revenue Service ( "IRS") and has been advised that it is conducting an audit for the tax year ending December 31, 2007. Debtor does not believe that a tax liability exists. To the extent that a tax liability does exist, it will be paid in full with interest at the statutory rate within sixty (60) months after filing the Petition for Chapter 11 relief. The balance of the IRS's claim, if any, shall be

treated as a General Unsecured Claim under Class 11 of the Plan. The IRS is impaired.

        8.      <u>Class 11: General Unsecured Claims:</u> Payments to General Unsecured Creditors, shall commence after payment of Administrative Claims, Priority Claims (if any) and any arrears due to Bayview Loan Servicing, LLC on the primary residence of Debtor, and the Secured Claims of ACCU (vehicles). General Unsecured Creditors shall be paid pro rata, without interest a total of $5,000.00, Payment shall be made without interest on claims. Debtor believes that General Unsecured Claims shall be paid their pro rata share within sixty (60) months of the Effective Date of the Plan.

    D.    <u>Application of the Absolute Priority Rule</u>

        11 U.S.C. §1129 does not apply to individual debtors in Chapter 11, as it relates to the Absolute Priority Rule, which would not allow confirmation of a plan over the objection of unsecured creditors if the Debtor was to retain its equity. The Amendments to the Bankruptcy Code in 2005 eliminated that provision as it relates to individual debtors in Chapter 11, if the Debtor commits to a payment plan of disposable income for 60 months. As defined by the Bankruptcy Code, Debtor has no disposable income, but will pay to her unsecured creditors more than the value of the liquidation of their non-exempt property over a 60 month period.

    E.    <u>Liquidation Analysis</u>

        Debtor owns real estate in Maricopa County and Mohave County, Arizona which is all either over-encumbered or at "break even". She has no equity in real estate and

11

has no equity in motor vehicles. The value of her non-exempt property is no more than $1,000 for some miscellaneous deposits and personal property. In a Chapter 11 case, the debtors must repay to their unsecured creditors an amount no less than what those creditors would have received in a Chapter 7 case. A Chapter 7 trustee would not pursue any of the non-exempt property owned by the Debtor and there would be no distribution to General Unsecured Creditors. Debtor is offering $5,000.00 in installment payments to her general unsecured creditors once payments to Administrative, Priority and Secured arrears and car payments have been completed, this amount is far more than what would have been available to those creditors in a Chapter 7 case. Debtor's Plan provides for payments to creditors which shall be made through the profits of Debtor's real estate business, and Debtor's post-petition income.

### F. History of the Debtor

The reasons for Debtor's recent financial hardship stem from many different outside factors. Debtor is married to John Morin. Debtor has filed her petition on behalf of marital community pursuant to 11 U.S.C. Section 541.

Debtor originally purchased the Maui Lane property for her Mother's occupancy in 2004 for a purchase price of $209,000. It is now appraised at $148,000. Her Mother was 82 years old at the time of the purchase of the home. . She was unable to take care of herself and eight months later, Debtor was forced to place her in assisted living. Debtor then sold her own residence and moved into the Maui Lane property. While living at Maui Lane, the Debtor had purchased Ivy Lane property with a lump sum payout from Debtor's husband's retirement. Debtor moved into the Ivy Lane property, making that her primary residence. To purchase Ivy Lane, Debtor used $125,000 of her Husband's retirement to purchase the

home. Debtor kept the Maui Lane home anticipating that when her sons went to college she could rent it to them to live there, with a plan that the house would be sold when financially feasible. Debtor's sons rented the Maui Lane home while in college in 2007 and 2008. Debtor obtained a third party renter in January, 2008, who is still renting the home, and may ultimately purchase it.

Debtor went back to work in 2007 as a registered nurse and as a consultant in corporate health and wellness. She had a contract position through APS Health Care which she anticipated would last for several years. In March, 2009, APS ending the Arizona program. Debtor was based out of the Montana office and all persons involved in the Montana office lost their jobs, including Debtor. In July, 2009, Debtor obtained a position with HMC Companies as Vice President of Clinical Account Management. She anticipates her salary to be $75,000 per year plus bonuses. Debtor cannot presently anticipate the amount of her bonuses.

Debtor's Husband retired from the Glendale Fire Department in September, 2006 at which time he received a lump sum retirement, which the parties wanted to invest. This was the down payment for the Ivy Lane property. Debtor's husband then obtained two positions, one with the Buckeye Fire Department where he employed as a captain at a salary of $85,000 per year. His employment with Buckeye Fire Department is very secure. He also was working for Glendale Community College where he taught fire science EMT and Paramedics. His teaching position at GCC was deferred in January, 2009 due to cutbacks. This position should be available to Husband again the future, as he has been teaching there for over 20 years.

In January, 2008, the Debtor purchased Beryl Court at the height of the Phoenix real

estate boom for $512,990, with the intention of making it her primary residence. The down payment on Beryl Court was $50,000, which the Debtor had obtained from the sale of other land she owned with her husband. The Debtor purchased Beryl Court because it was located on an acre of land in a gated community and is not considered a tract home. The Debtor thought it would it would be very easy to sell the Ivy Lane property quickly because she had put so much money down on it and because the real estate market was still very hot. Debtor plans to keep Beryl Court even though the value of that property has dropped to $382,000.

Ivy Lane was rented through June, 2009. The property is presently for rent again. The Debtor paid $511,000 for Ivy Lane, with $125,000 down. The subdivision was not completely built out when the real estate market crashed. The builder is now selling the same model for $300,000. The Debtor anticipates no problem in renting the property again. She ultimately plans to sell it when she is able to do so. She is not interested in being a long term landlord.

Debtor currently owns two investment rental real estate properties, her primary residence, and some raw land on contract. If the loans on the rental properties are reduced to the fair market value of the properties and the interest on mortgages is reset at a fixed rate at a market rate of interest, the Debtor will be able to maintain those properties, pay mortgage payments going forward and successfully reorganize and at least make some payment to their unsecured creditors, which would not be forthcoming in a Chapter 7 liquidation. The Debtor's goal is to ultimate sell the two rental homes.

Debtor and her Husband are presently employed and with rental income from the two properties, the Debtor should be able to generate sufficient revenue to maintain the

payments on all four properties. Debtor believes that her plan is feasible and will allow her to pay her secured debts (as least as to fair market value) and make some distribution to her unsecured creditors.

### III. FINANCIAL INFORMATION

A number of financial records have been attached as Exhibits to this Disclosure Statement. Debtor has included their most recent Chapter 11 operating reports, copies of their 2006-2008 tax returns, amortization schedules and pay off calculations on the secured portion of the mortgages and spread sheets showing income and expense projections for the rental properties and appraisals on the properties. All of these financial records have been prepared by the Debtor based upon records maintained by the Debtor in the ordinary course of her business.

### IV. LITIGATION

During the pendency of the Chapter 11 case, there have been stay lift motions filed but no stay relief orders have been entered and no final hearings have been set. Several agreements have been reached regarding adequate protection. Debtor has also filed complaints under 11 U.S.C. §506 to avoid liens on real property. Relief has been granted on those motions.

### V. TAX CONSEQUENCES TO CREDITORS

Debtor makes no representation as to the tax consequences of the payments, if any, to be received in accordance with the Plan of Reorganization. Those concerned about the tax consequences of the Plan of Reorganization should consult with their own tax advisors.

### VI. TAX CONSEQUENCES TO DEBTORS

There may be tax consequences to Debtor. It is impossible at this time to calculate or estimate what those consequences may be.

## VII. APPROVAL OF PLAN

In order to obtain confirmation of the Plan by the Bankruptcy Court, the Plan must be accepted by:

A. Each of the holders of the claims in Classes 4-10, OR

B. Those claimants in Classes 4-10 who actually vote on the Plan, claimants holding at least two-thirds (2/3) in dollar amount of the allowed claims in each class, who constitute more than one-half (½) in number of such claimants in each class. Attached hereto as Exhibit "F" is a Form of Ballot which will be circulated to all creditors of Debtor. The Plan may be confirmed even if it is not accepted by one or all of the impaired classes if the Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes. This procedure is commonly called "cram-down". A fairly simple description of "cram-down" as it applies to unsecured creditors is that Debtor cannot receive or retain property on account of its interests unless: (i) unsecured creditors are paid in full; (ii) unsecured creditors accept the Plan; or (iii) the Court determines that value given by Debtor under the Plan is equal to or greater than the property received or retained by it. The provision permitting "cram-down" is contained in 11 U.S.C. Section 1129(b), and may not apply to an individual Chapter 11 Debtor. It is a complex provision, and this summary is not intended to be a complete statement of the law.

\\\
\\\

Respectfully submitted this 15th day of September, 2009.

DECONCINI MCDONALD YETWIN & LACY, P.C.

/s/ Lawrence D. Hirsch, #004982
Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorney for Debtors

Approved:

_____
Judy Ables-Morin

/S/Judy Ables-Morin
Jud Ables-Morin

A copy of the foregoing was mailed
this ___ day of September, 2009, to:

Mailing Matrix

By: /s/ Linda Miernik
Legal Assistant to Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0473
Fax: 602-282-0520

```
 1
 2
 3
 4
 5  Approved:
 6
 7
 8  [signature: Judy Ables-Morin]
 9  Judy Ables-Morin
10
11
12  /S/Judy Ables-Morin
13  Jud Ables-Morin
14
15
16  A copy of the foregoing was mailed
17  this ___ day of September, 2009, to:
18
19
20  Mailing Matrix
21
22  By: /s/ Linda Miernik
23  Legal Assistant to Lawrence D. Hirsch
24  7310 North 16th Street, Suite 330
25  Phoenix, Arizona 85020
26  Phone: 602-282-0473
27  Fax: 602-282-0520
28
29
30
```