DeConcini McDonald Yetwin & Lacy, P.C.
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Phone: 602-282-0500
Fax: 602-282-0520
Direct line: 602-282-0472

Lawrence D. Hirsch, #004982
Attorney For Debtor

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re: | In Proceedings Under Chapter 11 |
| JUDY ABLES-MORIN, | Case No. 2-09-bk-04062-SSC |
| Debtor | DEBTOR'S PLAN OF REORGANIZATION |

TABLE OF CONTENTS

ARTICLE I.    Definitions..................................................................................................3

ARTICLE II.   Designation of Classes of Claims and Interests.................................3

        Class 1: Creditors Holding Administrative Claims...........................................4

        Class 2-8: Creditors Holding Secured Claims....................................................4

                Class 2: Bayview Loan Servicing/CitiMortgage........................................5
                Class 3: Deborah and Jim Walters..............................................................5
                Class 4: CitiMortgage.....................................................................................6
                Class 5: Ford Motor Credit Company LLC................................................6
                Class 6: Arizona Central Credit Union......................................................6
                Class 7: Arizona Central Credit Union......................................................6
                Class 8: IndyMac Bank....................................................................................

        Class 9: Executory Contracts................................................................................7

        Class 10: Creditors Holding Priority Claims......................................................7

1

<mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark><mark>
| | | |
|---|---|---|
| | | Class 11: General Unsecured Creditors........7 |
| ARTICLE III. | Provisions Respecting the Unimpaired Classes of Claims........7 | |
| | Class 1: Administrative Expenses........7 | |
| | Class 2: Bayview Loan Servicing/CitiMortgage........7 | |
| | Class 3: Deborah and Jim Walters........8 | |
| ARTICLE IV. | Provisions Respecting the Impaired Classes of Claims........8 | |
| | Class 4: CitiMortgage Inc........8 | |
| | Class5: Ford Motor Credit Company LLC........9 | |
| | Class 6 : Arizona Central Credit Union........9 | |
| | Class 7: Arizona Central Credit Union........9 | |
| | Class 8: IndyMac Bank........10 | |
| | Class 9: Ford Motor Credit Company LLC........10 | |
| | Class 10: Internal Revenue Service........10 | |
| | Class 11: General Unsecured Creditors........11 | |
| ARTICLE V. | Source of Payments........11 | |
| ARTICLE VI. | Provisions for Execution of the Plan Which May Affect, Alter or Modify the Rights of All Classes and Claimants........12 | |
| ARTICLE VII. | Disputed Claims; Objection to Claims; Avoiding Actions........14 | |
| ARTICLE VIII. | Means for Execution of Plan........15 | |
| ARTICLE IX. | Modification of Plan Prior to the Order of Confirmation........16 | |
| ARTICLE X. | Retention of Jurisdiction........16 | |

The above named Debtor, Judy Ables-Morin, proposes the following Plan of Reorganization with creditors pursuant to 11 U.S.C. Section 1121(a).

# ARTICLE I

## DEFINITIONS

A. "Bankruptcy Code" means the United States Bankruptcy Code as set forth in Title 11, United States Code (11 U.S.C. Section 101 et. seq.), and as would be effective to a case filed on February 14, 1995.

B. "Bankruptcy Court" means the United States Bankruptcy Court for the District of Arizona.

C. "Debtor" means Judy Ables-Morin who is the Debtor-In-Possession in these Chapter 11 proceedings

D. "Effective Date" of Plan means 60 days following the day on which an order of the Bankruptcy Court confirming the Plan is entered, provided that no stay of the order is then in effect (whether or not an appeal from the order has been taken).

E. "Plan Distribution Date" means 60 days after the effective date, unless extended by the Bankruptcy Court.

F. "Order of Confirmation" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

G. "Plan" means this Plan of Reorganization and all modifications and amendments which may subsequently be made, either by Debtors or by order of the Court, pursuant to Section 1127 of the Bankruptcy Code.

H. " Judy Ables-Morin" means the Debtor in these Chapter 11 proceedings.

I. All other terms not specifically defined above shall have those meanings ascribed by the Bankruptcy Code.

# ARTICLE II

## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Holders of all claims, as defined in 11 U.S.C. Section 101(4) against Debtor of whatever nature, whether or not scheduled, liquidated or unliquidated, absolute or contingent, including all claims arising from the rejection of executory contracts, shall be bound by the provisions of this Plan and are hereby classified below:

    A.    <u>Classes of Claims and Interests</u>

        The Plan divides the creditors into 10 classes. The classes under the Plan are described below:

        1.    <u>Class 1: Creditors Holding Administrative Claims</u>

Debtor has employed DeConcini, MacDonald, Yetwin and Lacy ("DeConcini") as General Counsel for the Debtor-in-Possession. DeConcini received a retainer of $12,000.00 from the personal funds of Debtor. To the extent that unencumbered funds are available to pay administrative expenses, counsel shall be paid from the estate. Counsel shall be paid only after fees are approved by the Court after Notice and Hearing. Debtor believes she is current on post-petition taxes. Debtor does not believe that she is indebted to the Office of the United States Trustee for any post-petition quarterly fee obligations. To the extent that such fees are unpaid, they shall be paid no later than the effective date of the Order Confirming Debtor's Chapter 11 Plan of Reorganization. DeConcini has not filed its first Fee Application but will do so prior to the hearing on the Disclosure Statement. To the extent that the retainer paid by Debtor is not adequate to cover all fees incurred by DeConcini, Debtor and DeConcini will make suitable arrangements for the payment of any unpaid fees due at the time of Confirmation of the Plan. Any and all fees due for other outside professionals shall be paid in full by Debtor, either upon the effective date of confirmation of the Plan or pursuant to an agreement reached between the Debtor and the Claim holder or upon an Order approving the fees, if unencumbered funds are present. Debtor shall remain current in required filings of monthly operating reports and post-Confirmation reports as well as payment of quarterly fees until the case is closed. Payment of allowed Administrative Expenses shall be made from the cash flow of Debtor's business operations, post-petition income, and/or the liquidation of Debtor's assets. Debtors shall promptly pay all fees due the Office of the United States Trustee.

    2. <u>Class 2-8: Creditors Holding Secured Claims</u>

    a. <u>Class 2: Bayview Loan Servicing LLC:</u> Bayview Loan Servicing LLC ("Bayview") services a first mortgage on the Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona 85355 for CitiMortgage, Inc. The debt due to Bayview is approximately $461,650.00. Pursuant to 11 U.S.C. Section 1123(b)(5) this lien holder's rights may not be modified, and is therefore unimpaired. Debtor is attempting to negotiate

4

a loan modification with this creditor.

      b.    <u>Class 3: Deborah and Jim Walters:</u> These creditors are unimpaired. The creditors are secured on real property located at Parcel 8-D, Silver Mountain Ranch, Mohave County, Arizona. Debtor will continue to make payments as required under the contract for sale.

      c.    <u>Class 4: CitiMortgage:</u> CitiMortgage holds a first mortgage on the Debtors' investment property located at 18229 W. Maui, Surprise, Arizona 85388. The amount due Citi Mortgage is approximately $162,000.00 and the property has a fair market value of $148,000.00. Debtors will bifurcate CitMortgage's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due CitiMorgage (approximately $14,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $665.35. The pay off of the principal at the end of 96 months will be $135,277.02. CitiMortgage has filed a Motion to Lift the Automatic Bankruptcy Stay. Debtor has filed a response that the property is necessary for an effective reorganization. CitiMortgage is impaired.

      d.    <u>Class 5: Ford Motor Credit Company LLC :</u> Ford Motor Credit Company LLC ("Ford Credit") has a lien on Debtor's' 2007 Ford Focus. The debt due Ford Credit is approximately $13,300.00 and the fair market value of the car is $8,000.00. Ford Credit filed for Relief from the Automatic Stay, and Debtor did not oppose the motion. Stay relief was granted and the vehicle has been surrendered. Any deficiency due Ford Credit on this claim, shall be treated as a General Unsecured Claim under Class 11 of the Plan. Ford Credit is impaired.

      e.    <u>Class 6: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") has a non purchase money lien on Debtor's 2005 Ford Truck 4 x 4 and Debtor's 2006 Ford Truck. The debt due ACCU is approximately $39,000.00 and the fair

market value of the 2005 Ford 4x4 is $15,000.00 and the value of the 2006 Ford Truck is $11,000.00. Debtor shall bifurcate ACCU's claim into a secured and unsecured portion. The secured portion of the claim shall be paid in 60 equal monthly payments at 5% interest commencing upon the Plan Distribution Date. Debtor has offered adequate protection and has received no response from ACCU. The unsecured portion of the claim shall be treated as a General Unsecured Claim under Class 11 of the Plan. ACCU shall release its lien on the car after completion of payments of the secured portion of the claim. Monthly payments on the 2005 vehicle will be $283.07. Monthly payments on the 2006 vehicle will be $207.58. ACCU is impaired.

      f.      <u>Class 7: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") held a second lien on Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona and Debtor's investment property located at 18229 W. Maui, Surprise, Arizona 85388. Complaints under 11 U.SC. Section 506 have been filed on each lien and default judgments have been entered. Pursuant to the default judgments the liens have been set aside and these claims of ACCU shall be treated as a General Unsecured Claims under Class 11 of the Plan. ACCU is impaired.

      g.      <u>Class 8: IndyMac Bank:</u> IndyMac Bank ("Indy Mac") has a first lien on Debtor's investment property located at 18425 W. Ivy Lane, Surprise, Arizona 85388. The amount due IndyMac is approximately $410,000.00 and the property has a fair market value of $280,000.00. Debtors will bifurcate IndyMac's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due IndyMac (approximately $130,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $1,258.78. The pay off of principal at the end of the 96 month plan will be $255,928.24. IndyMac is impaired.

3. Class 9: Executory Contracts

Debtor is a party to a lease with Ford Motor Credit Company LLC ( "Ford Credit") for lease on a 2008 Ford Focus. Debtor has rejected the lease and surrendered the vehicle. The balance due Ford Credit shall be treated as a General Unsecured Claim under Class 11 of the Plan. Ford Credit is impaired.

4. Class 10: Creditors Holding Priority Claims

Debtor has recently been contacted by the Internal Revenue Service ( "IRS") and has been advised that it is conducting an audit for the tax year ending December 31, 2007. Debtor does not believe that a tax liability exists. To the extent that a tax liability does exist, it will be paid in full with interest at the statutory rate within sixty (60) months after filing the Petition for Chapter 11 relief. The balance of the IRS's claim, if any, shall be treated as a General Unsecured Claim under Class 11 of the Plan. The IRS is impaired.

5. Class 11: General Unsecured Creditors

Payments to General Unsecured Creditors shall commence after payment of Administrative Claims, Priority Claims and any arrears due to Bayview on Debtor's primary residence. General Unsecured Creditors shall be paid pro rata, without interest up to a total of $5,000.00. Payment shall be made without interest on claims, as Debtor has no non-exempt property and does not have disposable income. Debtor believes that General Unsecured Claims shall be paid their pro rata share within sixty (60) months of the Plan Distribution Date.

## ARTICLE III

## PROVISIONS RESPECTING THE UNIMPAIRED CLASSES OF CLAIMS

1. <u>Class 1: Administrative Expenses:</u> The holders of claims for unpaid Administrative Expenses incurred by the Debtor during the course of the Chapter 11 case (including the actual and necessary expenses for preserving the estate, such as unpaid attorney's fees) estimated in the aggregate to be approximately $20,000.00, will be paid in full commencing either the Plan Distribution Date or upon the allowance of the claim by the Bankruptcy Court, whichever is later, or at such other time as is mutually agreeable to the claimant and the Debtor. Claims for post-petition taxes, if any, and unpaid Quarterly Fees due the office of the United States Trustee shall be paid immediately when due.

2. <u>Class 2: Bayview Loan Servicing LLC:</u> Bayview Loan Servicing LLC ("Bayview") services a first mortgage on the Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona 85355. For CitiMortgage, Inc. The debt due to Bayview is approximately $461,650.00. Pursuant to 11 U.S.C. Section 1123(b)(5) this lien holder's rights may not be modified, and is therefore unimpaired. Debtor is attempting to negotiate a loan modification with this creditor.

3. <u>Class 3: Deborah and Jim Walters:</u> These creditors are unimpaired. The creditors are secured on real property located at Parcel 8-D, Silver Mountain Ranch, Mohave County, Arizona. Debtor will continue to make payments as required under the contract for sale.

## ARTICLE IV

## PROVISIONS RESPECTING THE IMPAIRED CLASSES OF CLAIMS

1. <u>Class 4: CitiMortgage Inc.</u> CitiMortgage Inc. ("CitiMortgage) holds a first mortgage on the Debtors' investment property located at 18229 W. Maui, Surprise, Arizona 85388. The amount due CitiMortgage is approximately $162,000.00 and the property has a fair market value of $148,000.00. Debtors will bifurcate CitMortgage's claim

into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due CitiMorgage (approximately $14,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $665.35. The pay off of the principal at the end of 96 months will be $135,277.02. CitiMortgage has filed a Motion to Lift the Automatic Stay. Debtor has responded and the matter is still pending.

2. <u>Class 5: Ford Motor Credit Company LLC:</u> Ford Motor Credit Company LLC ("Ford Credit') has a lien on Debtor's' 2007 Ford Focus. The debt due Ford Credit is approximately $13,300.00 and the fair market value of the car is $8,000.00. Ford Credit filed for Relief from the Automatic Stay, and Debtor did not oppose the motion. Stay relief was granted and the vehicle has been surrendered. Any deficiency due Ford Credit on this claim, shall be treated as a General Unsecured Claim under Class 11 of the Plan.

3. <u>Class 6: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") has a non purchase money lien on Debtor's 2005 Ford Truck 4 x 4 and Debtor's 2006 Ford Truck. The debt due ACCU is approximately $39,000.00 and the fair market value of the 2005 Ford 4x4 is $15,000.00 and the value of the 2006 Ford Truck is $11,000.00. Debtor shall bifurcate ACCU's claim into a secured and unsecured portion. The secured portion of the claim shall be paid in 60 equal monthly payments at 5% interest commencing upon the Plan Distribution Date. Debtor has offered adequate protection and has received no response from ACCU. The unsecured portion of the claim shall be treated as a General Unsecured Claim under Class 11 of the Plan. ACCU shall release its lien on the car after completion of payments of the secured portion of the claim. . Monthly payments

on the 2005 vehicle will be $283.07. Monthly payments on the 2006 vehicle will be $207.58

4. <u>Class 7: Arizona Central Credit Union:</u> Arizona Central Credit Union ("ACCU") holds a second lien on Debtor's primary residence located at 18554 W. Beryl Court, Waddell, Arizona and Debtor's investment property located at 18229 W. Maui, Surprise, Arizona 85388. Complaints under 11 U.SC. Section 506 have been filed on each lien and default judgments have been entered. Pursuant to the default judgments the liens have been set aside and the claims of ACCU shall be treated as a General Unsecured Claims under Class 11 of the Plan.

5. <u>Class 8: IndyMac Bank:</u> IndyMac Bank ("Indy Mac") has a first lien on Debtor's investment property located at 18425 W. Ivy Lane, Surprise, Arizona 85388. The amount due IndyMac is approximately $410,000.00 and the property has a fair market value of $280,000.00. Debtors will bifurcate IndyMac's claim into secured and unsecured portions. The secured portion of the claim shall be paid at 4.5% interest with a 40 year amortization schedule with a balloon payment of all remaining principal due on month 96 after the Plan Distribution Date. The balance of the amount due IndyMac (approximately $130,000.00) shall be treated as a General Unsecured Claim under Class 11 of the Plan. Monthly payments on the secured portion of the claim will be $1,258.78. The pay off of principal at the end of the 96 month plan will be $255,928.24.

6. <u>Class 9: Executory Contracts</u>

Debtor is a party to a lease with Ford Motor Credit Company LLC ( "Ford Credit") for lease on a 2008 Ford Focus. Debtor has rejected the lease and surrendered the vehicle. The balance due Ford Credit shall be treated as a General Unsecured Claim under Class 11 of the Plan.

7. Class 10: Creditors Holding Priority Claims

Debtor has recently been contacted by the Internal Revenue Service ( "IRS") and has been advised that it is conducting an audit for the tax year ending December 31, 2007. Debtor does not believe that a tax liability exists. To the extent that a tax liability does exist, it will be paid in full with interest at the statutory rate within sixty (60) months after filing the Petition for Chapter 11 relief. The balance of the IRS's claim, if any, shall be treated as a General Unsecured Claim under Class 11 of the Plan. The IRS is impaired.

8. Class 11: General Unsecured Claims: Payments to General Unsecured Creditors, shall commence after payment of Administrative Claims, Priority Claims(if any) and any arrears due to Bayview Loan Servicing, LLC on the primary residence of Debtor, and the Secured Claims of ACCU (vehicles). General Unsecured Creditors shall be paid pro rata without interest a total of $5,000. Payment shall be made without interest on the claims. Debtor believes that General Unsecured Creditors shall be paid their pro rata share within sixty (60) months of the Effective Date of the Plan.

ARTICLE V

SOURCE OF PAYMENTS

The source of payment to claimants shall be from the net cash flow of Debtor. Net cash flow for Debtor shall be calculated as follows and shall equal:

1) Gross cash receipts received by Debtor, less

2) Ordinary and reasonable personal living expenses,

3) Operating and business expenses for Debtor's operation, if any; and

4) Payment for administrative expenses and post-confirmation expenses due to professional persons such as attorneys, accountants and appraisers.

Debtor shall make payments to General Unsecured Creditors after completion of

payment of Administrative Claims, Priority Claims ( if any) and any arrears due to Bayview Loan Servicing LLC on the primary residence of Debtor, and the Secured Claims of ACCU (vehicles). If funds are available, Debtor shall make payments to Class 11 simultaneously with these other payments discussed above. Payments will be based upon available funds and will be made until a total payout of $5,000 is made to Class 11 creditors. Debtor anticipates that payments to Class 11 creditors will be completed within 60 months of the Plan Distribution Date. Payments shall cease when the $5,000 is paid in full.

## ARTICLE VI
### PROVISIONS FOR EXECUTION OF THE PLAN WHICH MAY AFFECT, ALTER, OR MODIFY THE RIGHTS OF ALL CLASSES AND CLAIMANTS

A. As of the Plan Distribution Date, Debtor shall comply with its obligation to file post-confirmation quarterly reports and pay any required post-confirmation fees to the United States Trustee.

B. As of the Plan Distribution Date, all of the property of the estate of Debtor shall be deemed transferred vested in Debtor, all such property shall no longer be considered property of the estate as defined in 11 U.S.C. § 541 and all such property shall be free and clear of liens, claims of interest of creditors accepted as specifically provided for in this Plan.

C. Upon confirmation, all claims and causes of action of Debtor against other entities, including rights of Debtors-In-Possession under Chapter 11 of the Bankruptcy Code to recover any preference, transfer assets, or damage, shall vest in Debtor.

D. After the Plan Distribution Date, Debtor shall continue her business and manage her affairs without supervision of the Bankruptcy Court and may enter into such agreements and transfer, convey and encumber, use and lease its assets as it deems appropriate under the circumstances without the requirement of seeking approval from the Bankruptcy Court, but nothing in this provision shall impair liens and encumbrances which a holder has retained pursuant to the express terms of this Plan. The distributions to

holders of claims described in this Plan are minimum distributions only and Debtor shall have the right and discretion at all times to make full and partial prepayments without penalty. When a Plan calls for a number of equal payments, the amount of the payment shall be calculated assuming that payments are made on the first of the month when due and include interest amortized at the applicable rate. All payments to creditors under this Plan shall be applied first to interest and then to principal. Prepayment of payments may, therefore, reduce the amount of the final payment or reduce the number of payments otherwise due under the Plan and late payments may increase the number of payments otherwise required by the Plan.

  E. Upon the Plan Distribution Date, unless a stay has been entered relating to the order of confirmation, the order for automatic stay described in 11 U.S.C. § 362(a) shall terminate; provided, however, except as otherwise expressly specified herein, that all creditors and claimants shall be enjoined from continuing with or commencing with any action or proceeding against Debtor, and the community property of Debtor and her non debtor spouse, Debtor's spouse as codebtor, or guarantors of Debtor without further order of the Bankruptcy Court.

  All distributions of money under the Plan which are returned by the post office undelivered or which cannot be delivered due to lack of current address shall be retained by Debtor in trust for the distributee; after the expiration of six months from the date of the first attempted distribution, the unclaimed monies and all distributions will vest in Debtor, free of any claim of the distributee.

  F. Except as expressly specified herein, no creditor or claimant, whether secured, unsecured, priority or non-priority shall be entitled to any fine, penalty exemplary or punitive damage, late charge, default interest or any other monetary charge relating to or arising from any default deemed disallowed whether or not an objection is filed thereto. Unsecured creditors shall not be entitled to interest on their claims, whether or not provided for in any agreements, from and after the commencement of the case, unless

otherwise expressly provided for in this Plan and shall not be entitled to any cost, expense or attorney's fees.

G. Pursuant to 11 U.S.C. § 1141(a), notwithstanding 11 U.S.C. § 506(d) and except as provided for in 11 U.S.C. § 1141(d)(2) and (d)(3), upon confirmation of the Plan, the provisions of the Plan will bind Debtor, any entity issuing securities under the Plan, any entity acquiring property under the Plan, any creditor or equity security holder, whether or not the claim or interest of such creditor is impaired under the Plan and whether or not such creditor or equity security holder has accepted the Plan or filed a Proof of Claim.

H. All claims of a lien in any of Debtor's personal property shall be deemed released, terminated and withdrawn, unless the creditor claiming a lien has filed a timely, formal and proper Proof of claim with the Bankruptcy Court setting forth the basis and extent of the lien.

I. Upon payment of sums provided under the Plan, all claims of any creditor of Debtor arising prior to the confirmation of the Plan against Debtor and any of its then former, present or future shareholders and agents shall be wholly released and discharged, and any actions or proceedings against said shareholders and agents of Debtor, including any judgment and judgment liens, shall be terminated, relinquished and released.

J. Debtor's obligation to make any payment under this Plan may be discharged to the extent that such payment is made by any entity that is liable with Debtor on or has secured the claim or the right to payment giving rise to Debtor's obligation. If any entity that is liable to a creditor as a result of a pre-petition claim against Debtor, voluntarily or involuntarily, makes a payment on such claim, the entity shall be subrogated to the rights of Debtor subject to the limitations of 11 U.S.C. § 509(c). In the alternative, if the claim arises out of Debtor's failure to pay a tax out of an administrative expense claim against the estate or out of a claim which is secured by the property of the estate or of Debtor, the Debtor may, but shall not be required, to reimburse the entity for such payment.

## ARTICLE VII

### DISPUTED CLAIMS; OBJECTIONS TO CLAIMS; AVOIDING ACTIONS

Debtor, her attorneys or any party in interest may file, prior to the Plan distribution to date, (a) an objection to any claim, or (b) a motion to determine the extent, priority or amount of any secured or other claim. Copies of all objections or motions must be served at the same time upon Debtor's attorney:

> LAWRENCE D. HIRSCH
> DECONCINI MCDONALD YETWIN & LACY, P.C.
> 7310 NORTH 16TH STREET, SUITE 330
> PHOENIX, ARIZONA 85020

Debtor and her attorney may file at any time prior, up to 2 years after the effective date, any action to recover or set aside any preference, transfer, assets or damages or to set aside any lien or encumbrance to which they may be entitled under the Bankruptcy Code. Any such objection, motion or action not filed and served within such time shall be deemed waived. If any claim, right interest, privilege or lien is objected to or has been challenged by adversary proceeding, contested matter, objection or otherwise, or if an order is entered staying the Order of Confirmation, any payments that are otherwise due to the claimant pending such objection shall be reserved in interest-bearing accounts and set aside sufficient to satisfy the claim as filed by the claimant or as scheduled by Debtor. Said accounts shall be segregated, federally insured, interest-bearing accounts not subject to set-off by the holder of the then financial institution holding the funds. No later than 30 days following the date of the entry of a final, nonappealable order resolving each disputed or objectionable claim, or upon the expiration of all stays of the Order of Confirmation, the reserved payments, plus interest earned thereon, shall be distributed to the claimant or retained by Debtors, as the case may be, in accordance with the terms and conditions of the order resolving such disputed claim and this plan.

## ARTICLE VIII

### MEANS FOR EXECUTION OF PLAN

Debtor shall commence making payments under this Plan 60 days after the Effective Date of confirmation of this Plan. Payment shall be made monthly and shall be based upon the available net proceeds, as that term is defined hereinabove. Monthly payments shall continue until all creditors have been paid in accordance with the terms and conditions of Debtors' confirmed Plan of Reorganization. In the event, Debtor has insufficient net proceeds in any given month to make the prescribed payment such payment shall be deferred and Debtor shall make such payment as deferred plus any additional interest incurred as a result of the deferral. Monthly payments shall continue until all creditors have been paid as contemplated under the terms and conditions of Debtor's confirmed Plan of Reorganization.

## ARTICLE IX

### MODIFICATION OF PLAN PRIOR TO THE ORDER OF CONFIRMATION

Debtor may propose amendments or modification of the Plan in accordance with 11 U.S.C., Section 1127(a). After confirmation, Debtor may amend this Plan in the manner provided for by 11 U.S.C. § 1127(b). The Bankruptcy Court may comment at any time, so long as it does not affect the interest of the creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the Order of Confirmation in such manner as may be necessary to carry out the purpose and effect of this Plan.

## ARTICLE X

### RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, until the final allowance or disallowance of all claims affected by the Plan, and with respect to the following matters:

    A.    To adjudicate all proceedings which Debtor may bring prior to 2 years after the filing date to set aside liens or encumbrances, and to recover any preferences, transfers, assets or damages to which it may be entitled under applicable provisions of the

Bankruptcy Code or other federal, state or local law;

B.  To adjudicate all controversies concerning the classification, allowance or estimation of any claim or equity security interest;

C.  To hear and determine all claims arising from the rejection of any executory contracts, including leases, and to approve the rejection and termination with respect to any executory contracts as to which an application for rejection or termination is filed prior to the entry of the Order of Confirmation;

D.  To liquidate and determine the amount of damages in connection with any disputed, contingent or unliquidated claims;

E.  To adjudicate claims to a security interest, ownership or other interest in any property of Debtor or in any proceeds thereof;

F.  To resolve any disputes regarding the interpretation of the Plan;

G.  To modify the Plan as may be necessary pursuant to the Bankruptcy Code;

H.  To adjudicate all claims or controversies arising out of any purchases, sales, obligations or contracts, made or undertaken by Debtor or complete during the pendency of the proceedings;

I.  To recover all assets and properties of Debtor, wherever located, including any excessive or erroneous payments made to creditors, or in connection with leases or contracts; and

J.  To make such orders as are necessary or appropriate to carry out the provisions of this Plan.

Respectfully submitted this 15th day of September, 2009.

DECONCINI MCDONALD YETWIN & LACY, P.C.

/s/ Lawrence D. Hirsch, #004982
Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorney for Debtor

17

any executory contracts as to which an application for rejection or termination is filed prior to the entry of the Order of Confirmation;

      D.     To liquidate and determine the amount of damages in connection with any disputed, contingent or unliquidated claims;

      E.     To adjudicate claims to a security interest, ownership or other interest in any property of Debtor or in any proceeds thereof;

      F.     To resolve any disputes regarding the interpretation of the Plan;

      G.     To modify the Plan as may be necessary pursuant to the Bankruptcy Code;

      H.     To adjudicate all claims or controversies arising out of any purchases, sales, obligations or contracts, made or undertaken by Debtor or complete during the pendency of the proceedings;

      I.     To recover all assets and properties of Debtor, wherever located, including any excessive or erroneous payments made to creditors, or in connection with leases or contracts; and

      J.     To make such orders as are necessary or appropriate to carry out the provisions of this Plan.

Respectfully submitted this ____ day of September, 2009.

DECONCINI MCDONALD YETWIN & LACY, P.C.

/s/ Lawrence D. Hirsch, #004982
Lawrence D. Hirsch
7310 North 16th Street, Suite 330
Phoenix, Arizona 85020
Attorney for Debtor

Approved:

_____
Judy Ables-Morin